IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                              :          CASE NO. 12-05710
                                                    :
MJS LAS CROABAS PROPERTIES, INC.  :          CHAPTER 11
                                                    :
        Debtor                                      :
_____ :

OPINION AND ORDER

        This case is before the court upon the motion for an order to determine that MJS Las Croabas Properties, Inc. (hereinafter referred to as the "Debtor") is a single asset real estate property or project as defined in the Bankruptcy Code, 11 U.S.C. §101(51B), filed by the Federal Deposit Insurance Corporation's, as Receiver for Weternbank Puerto Rico, (hereinafter referred to as the "FDIC-R"). For the reasons set forth below this court determines that Debtor is a single real estate property or project pursuant to §101(51B) of the Bankruptcy Code, and that, as such, Debtor is subject to §362(d)(3) of the Bankruptcy Code.

Facts and Procedural Background

        The Debtor filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on July 19, 2012. The Debtor listed the following properties in Schedule A (Real Property); (i) 64 apartment units, 28 boat parking spaces and 48 storage units that have an indeterminate current value and a secured claim in the amount of $20,203,938; (ii) lots #7266, 15498, 1723, 2597, 11831, 111832 of which no current value is listed, no amount of secured claim is listed and also the nature of Debtor's interest in the property is left blank; (iii) lot of land #15,144 with 71.17 square meters (vacant land) with indeterminate value and no secured claim attached to the same; and (iv) lot of land #12,229 with 3.63 "cuerdas" for future development of 106 apartment units, 29 boat parking spaces, 19 jet ski parking spaces and 1 storage room pending construction with indeterminate value and no secured claim attached to the same. The FDIC-R's claim was included in Debtor's Schedule D (Creditors Holding Secured Claims) as having been incurred in the year 2004 with a lien consisting of an inventory loan and secured by lands and buildings in the amount of $20,203,938, which is

unliquidated. The 341 meeting of the creditors was held and closed on August 27, 2012 (Docket No. 45).

The FDIC-R filed proof of claim #5-1 on November 6, 2012 in the amount of $20,478,204.36, of which $6,700,000 is secured (which is the same as the value of the property as included by the FDIC-R) and the remaining $13,778,204.36 as unsecured. On November 30, 2012, Debtor filed an objection to the secured portion of the FDIC-R'S proof of claim #5 alleging that the FDIC failed to produce documentation evincing that it has a perfected lien over Debtor's real property (Docket No. 132). The FDIC-R also filed proof of claim #6-1 on November 6, 2012 and amended proof of claim #6-2 on November 20, 2012. The FDIC-R's amended proof of claim #6-2 is for an unsecured claim in the amount of $40,709,406.59 and the basis for perfection is collateral assignment of sales agreements and options. On November 30, 2012 the Debtor objected to amended proof of claim #6-2 because the claim against the Debtor is related to another entity, Sabana del Palmar, Inc. and the FDIC failed to include the documents which demonstrate that Debtor is responsible for the obligations of Sabana del Palmar, Inc. Whether or not the FDIC-R is a secured creditor does not affect the determination that Debtor meets the definition of a single asset real estate ("SARE").

On August 31, 2012, the FDIC-R filed a "Motion to Determine that Debtor's Property is a Single Asset Real Estate Pursuant to 11 U.S.C. §101(51B)" alleging that Debtor satisfies the three prong test in the statutory definition, and as a SARE, Debtor is subject to 11 U.S.C. § 362(d)(3) (Docket No. 48). On August 31, 2012, the FDIC-R filed a motion submitting exhibits to the motion to determine that Debtor is a SARE under 11 U.S.C. §101(51B) (Docket No. 49).

Debtor filed its "...Response to the FDIC-[R]'s Motion to Declare the Debtor a Single Asset Real Estate under the Bankruptcy Code and Proposal" on September 28, 2012 proposing the following to avoid excessive litigation and ensure its right to reorganize; namely; (i) that the court order Triglid Incorporated ("Triglid"), pre-petition Receiver appointed by the United States District Court for the District of Puerto Rico ("District Court") in a foreclosure case, to return its property to resume administration of the same and in exchange the Debtor will not contest the SARE designation as long as the Debtor has 90 days from the date that possession and administration of its property is returned to Debtor; (ii) if the court determined that Debtor is a SARE to provide the Debtor 90 days

from the date of such order to submit a disclosure statement and continue to allow the Debtor to be protected by the automatic stay provisions "...due to the fact that the administration of the pre-petition [r]eceiver has already slowed the Debtor's reorganization"(Docket No. 64). On October 10, 2012, the FDIC-R filed its "...Reply to Debtor's Response to FDIC-R's Motion for the Court to Determine the Debtor is Subject to 11 U.S.C. §362(d)(3)" by which it reaffirms its position that Debtor is a SARE and argues that despite the fact that Debtor currently is not in possession of the property or of its administration, it is aware of the operations of the same because the pre-petition receiver is providing monthly reports regarding the management and operations of the same in compliance with the receivership Order from the District Court, thus Debtor is able to create a plan and disclosure statement (Docket No. 77).

On October 26, 2012, Debtor filed a "Motion to Inform Regarding Its Opposition to the FDIC's Effort to Designate the Debtor as a Single Asset Real Estate Project under the Bankruptcy Code" by which it argues that Debtor is not a SARE due to the following: (i) Debtor's property is not a single property because there is pending the construction of Phase 2 of the first project and has identified future projects; (ii) Phase 2 has not begun, but the permits for the construction of 106 residential units have already been obtained; (iii) "...Debtor's business is not the passive collection of rents or the proceeds from sales, the Debtor's activities include the analysis of possible uses of Phase 2 including the marketing and selling of the permits to other parties, identifying financing to construct more residential units on the premises of Phase 2, an analysis of market trends to develop alternative business models for Phase 2, and other activities and future projects;" and (iv) the Debtor alleges that two of the prongs necessary for a SARE determination are inapplicable in the instant case (Docket No. 97-1).

<u>Applicable Law and Analysis</u>

*Single Asset Real Estate Cases ("SARE")*

Section 101(51B) of the Bankruptcy Code defines the term "single asset real estate" as, "... real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than

the business of operating the real property and activities incidental." 11 U.S.C. § 101(51B). Pursuant to Section 101(51B) in order for a bankruptcy case to fall under the definition of a SARE it must satisfy the following three (3) factors: (i) the real property must constitute a single property or project, other than residential real property with fewer than four residential units; (ii) the real property must generate substantially all of the debtor's gross income; and (iii) debtor must not be involved in any substantial business other than the operation of its real property and incidental activities. In re Philmont Dev. Co., 181 B.R. 220, 223 (Bankr. E.D. Pa. 1995).

The first factor which the bankruptcy case must satisfy is whether the real property constitutes a single property or project, other than residential real property with fewer than four residential units. Apartment buildings and residential projects are within the scope of Section 101(51B). In re Kkemko, Inc., 181 B.R. 47, 50 (Bankr. S.D. Ohio 1995); In re Philmont Dev. Co., 181 B.R. at 224. In the instant case, Debtor acquired title to certain parcels located in Fajardo, Puerto Rico. Debtor developed certain property into a residential condominium project known as "The Ocean Club at Seven Seas" ("Ocean Club") located in Las Croabas Ward in Fajardo, Puerto Rico. Ocean Club consists of 300 residential condominium units of which 64 units remain unsold. Ocean Club is located through out several parcels. As of this date, Ocean Club is the only project actually developed by the Debtor. The Debtor is in the process of analyzing whether Phase 2 of the Project will consist of the sale of the construction permits to other parties or in seeking financing to construct more residential units on the premises of Phase 2. Debtor is presently in the business of selling the remaining residential units of Ocean Club. This court finds that Ocean Club satisfies the first prong of the SARE test, as it is a single project located throughout several parcels that consists of 300 residential units. Furthermore, the financing for Ocean Club was treated as one project by the Debtor, given that the construction loan was used primarily to finance the construction of Ocean Club and repayment of the principal of the same was based on the net sales proceeds generated from the sale of the residential units from Ocean Club (Docket No. 49, Exhibits 4(i) & 4(ii)).

The second prong of the SARE test is whether the real property generates substantially all of the Debtor's gross income. The only source of Debtor's income is generated from the sale of residential units. Debtor has not indicated that it derives income from any other source such as the

4

operation of a golf club, the operation of a marina or the operation of a hotel. Thus, Debtor satisfies the second prong of the SARE test.

The third and remaining prong of the SARE test is whether the Debtor has any other substantial business activities other than the operation of its real property, namely the Ocean Club project. In In re Kkemko, the court noted that in common usage the term single asset real estate generally referred to buildings or raw land which were intended to be income producing. In re Kkhemko, 181 B.R. at 49. The Debtor has only indicated that, at this point, it is considering alternatives for Phase 2 of the Project which may materialize in the sale of the construction permits to other parties or in seeking financing to construct more residential units on the premises of Phase 2. These are only potential business activities which have not been developed. In In Centofante v. CBJ Dev. (In re CBJ Dev.), the court noted that, "[t]he use of the present tense by Congress in §101(51B) suggests that only current activities may be considered in determining whether the debtor is conducting substantial business activities other than the operation of the property." In Centofante v. CBJ Dev. (In re CBJ Dev.), 202 B.R. 467, 472 (B.A.P. 9th Cir. 1996). The other substantial business activities or operations a debtor carries out must be separate and distinct from owning and managing real estate. See Ad Hoc Group of Timber Noteholders v. Pacific Lumber Co. (In re Scotia Pacific Co., LLC), 508 F. 3d 214, 217 (5th Cir. 2007). This court finds that Debtor is not involved in any substantial business other than owning and managing the Ocean Club project, thus satisfying the third prong of the SARE test.

Conclusion

In view of the foregoing, the court concludes that Debtor satisfies all three (3) prongs of the SARE test, and, as such, is a single asset real estate case and is subject to 11 U.S.C. § 362(d)(3).

SO ORDERED.

In San Juan, Puerto Rico, this 5th day of December 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge