IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

MJS LAS CROABAS PROPERTIES, INC.

Debtor

CASE NO.  12-05710 (ESL)

CHAPTER 7

**FILED & ENTERED**

MAR 1 3 2020

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

OPINION AND ORDER

The only matter pending in this case is for the court to determine if the funds consigned with the court by the Chapter 7 trustee after liquidating all the property of the estate should be disbursed to the Municipal Revenue Collection Center ("CRIM") or to WM Capital Partners 54, LLC ("WM"). CRIM filed a secured claim on September 7, 2012 for past due property taxes. WM purchased most of the properties of the chapter 7 estate on December 26, 2016. CRIM claims to be secured by the properties sold to WM. The controversy has been before the court for a substantial period and the legal position of the parties has changed throughout the case. Thus, a narrative of the travel of the case as it relates to the present controversy is necessary.

The Debtor is a construction company which developed a 300-unit residential condominium. The construction was financed by Westernbank Puerto Rico ("Westernbank"). Westernbank failed, the FDIC was appointed receiver and obtained the loan. The original objection to the proof of claim filed by the CRIM was filed by the Federal Deposit Insurance Corporation ("FDIC") in its receiver capacity challenging CRIM's rank and amounts owed. The FDIC later transferred its claim to WM. WM subsequently questioned whether any amounts were owed due to their exempt status under the "New Construction Exemption to the Municipal Property Tax Act."

On November 22, 2016 the chapter 7 trustee, WM, secured creditors TOCSS Fajardo Newco 1 LLC, TOCSS Fajardo Newco 2 LLC and TOCSS Fajardo Newco 3 LLC, filed a joint motion to sell properties at a private sale. Paragraphs 24 and 25 of the motion address payment

-1-

of CRIM's claim. The same provide for the retention of funds from the sale proceeds to pay any amount owed to CRIM after the court so determines after the parties move the court. On December 6, 2016 the court granted the motion to sell property and on December 14, 2016 the court entered a separate detailed order authorizing the sale of property of the debtor to WM in the amount of $1,900,000.00. On December 27, 2016 the chapter 7 trustee filed a motion to consign with the court pursuant to 31 L.P.R.A. §3182. the amount of $411,534.58 to account for the amounts due to CRIM for property taxes. The amount was determined in a joint motion filed by the chapter 7 trustee and CRIM. The request for consignment was granted on January 4, 2017.

On January 23, 2017 WM filed a motion requesting for a determination that there were no amounts owed to CRIM and to authorize the disbursement of the consigned funds to WM. The basis for WM alleging that there are no taxes owed to CRIM is that PR Public Law 198-2011, 21 L.P.R.A. §5151(ee), provided a "New Construction Exemption to the Municipal Property Tax Act." On March 8, 2017 CRIM filed its response challenging the position of WM that the properties it acquired were subject to the tax exemption under Public Law 198-2011. The court notes that on March 8, 2017 the Chapter 7 trustee filed his final report and proposed distribution, which does not provide for the consigned funds. The contested matter was scheduled for a hearing to be held on June 27, 2017.

The minutes of the June 27, 2017 hearing show that the amounts owed to CRIM ($411,538.58) are not in controversy and that the issue is whether the funds consigned by the Chapter 7 trustee should be disbursed to WM or CRIM. The bankruptcy estate is not affected as the issue hinges on determining whether WM is entitled to the property tax exemption and the proper forum to so determine. The parties were granted time to brief the legal issue of whether WM is entitled to the property tax exemption. The parties, WM and CRIM, filed their respective briefs. CRIM continued to allege that the court lacks jurisdiction and WM answered that the court has jurisdiction under §505(a)(1).

On October 23, 2017 the court entered an order granting CRIM's request for the disbursement of funds. The court agreed with the CRIM's legal position that it lacked jurisdiction and so concluded that it "lacks jurisdiction to entertain whether the debtor MJS Las Croabas Properties, Inc. is entitled to a tax exemption as alleged by WM Capital Partners 54, LLC. The court's decision is without prejudice to WM Capital Partners 54, LLC litigating the issue before the Puerto Rico state courts." The court acknowledges that the order is extremely terse and does not include the factual basis and the applicable law. It relied, mistakenly in retrospect, in adopting the factual exposition and legal arguments by CRIM. On April 13, 2018 the court denied a request by CRIM to disburse the funds finding that the allowance of CRIM's proof of claim hinges on determining whether WM is entitled to claim a tax exemption, and granting the request would circumvent the legal issue before the United States Bankruptcy Appellate Panel for the First Circuit ('BAP").

On November 6, 2017 WM filed a notice of appeal. On October 18, 2018 the BAP issued its decision (2018 WL 5226082) affirming this court's decision "that the court lacked jurisdiction to decide whether the debtor, MJS Las Croabas Properties, Inc. (the "Debtor"), was entitled to a certain property tax exemption under Puerto Rico law." The BAP's decision includes a factual exposition and legal analysis which the appealed order lacked and ultimately agreed with this court's conclusion. The narrative of facts in the BAP's decision clarifies critical events and the same are included in this opinion.

The legal analysis in the BAP's decision provides an excellent analysis regarding discretionary abstention and section 505(a) and fills the vacuum in this court's October 23, 2017 order. It specifically stated that "[w]hile the Order did not conclusively determine the parties' respective entitlements to the consigned funds, it did conclusively provide that the bankruptcy court would not determine the substantive legal question dividing the creditors." This court agrees with the BAP's conclusion that bankruptcy courts have authority to consider tax issues to the extent provided in §505(a)(1) and that such authority does not mandate that it be exercised

when the "outcome would not have no impact whatsoever on the Debtor's estate or its creditors."

The BAP decision analyzed the abstention provisions under 28 U.S.C. §1334(c)(1) and determined that the permissive language in §505 do not undermine the bankruptcy court's discretion to determine a debtor's tax liability. The court retains discretion to determine whether to abstain from rendering a determination. The BAP concluded that "[b]ecause the issue here is clearly dominated by Puerto Rico law, the dispute involves nondebtors, the determination of the tax liability will not affect any other creditors, and there is no threat of dissipation of the challenged funds as they have been consigned with the bankruptcy court, abstention would have been warranted." The BAP opinion further stated that discretionary abstention under 28 U.S.C. §1334(c)(1) is appropriate where the aims of §505 are not furthered, any delay will not interfere with the administration of the estate. Thus, the BAP found that "the record would have fully supported a decision by the bankruptcy court to abstain from deciding the issue."

After the BAP issued its mandate on November 23, 2018 the parties renewed their requests. The same were scheduled for a hearing. After considering their respective arguments, the court ordered the parties to file legal memoranda on the pending issues. The memorandums were timely filed. CRIM renewed its position that the amounts owed were not in question, and that the pending issue will have to be decided by the proper state administrative agencies and state courts. CRIM prays the court to order WM to commence the state court proceedings to determine whether the Debtor had a right to the tax exemption involving the funds consigned with this court, and that if WM fails to do so, the consigned funds be released to CRIM. WM invites the court to reconsider its jurisdictional decision, deny abstention and adjudicate the matter on the merits. WM argues that this court is unconstrained by the BAP's decision. WM also argues that the CRIM did not object to the sale order. After considering the parties' positions, it appears we are back at the very beginning.

At the outset, the court states that it agrees with the BAP's decision regarding the appropriateness of abstention and that although the CRIM did not object the sale motion and did

not appeal the sale order, the CRIM's right to the consigned funds, if any, were taken in consideration and safeguarded. In summary, the court agrees with CRIM's position and will expand on the reasons below.

The court will first discuss the procedure to file objections to claims. Fed. R. Bankr. P. 7001(2) expressly requires the initiation of an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property." In re Lugo Morales, 606 B.R, 16, 28 (Bankr. D.P.R. 2019). The initial objection by the FDIC questioned the priority of CRIM's lien and the supplemental objection by WM questioned whether any property tax was owed pursuant to the "New Construction Exemption to the Municipal Property Tax Act." Clearly, the proper vehicle to object the proof of claim filed by CRIM is an adversary proceeding under Part VII of the Bankruptcy Rules. However, to so require at this stage of the proceedings and considering the time that has elapsed will run afoul the aim of the Bankruptcy Rules, that is, "to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001. Moreover, considering the court's conclusion that discretionary abstention is appropriate, the outcome will not be affected by the procedural tool used to present the controversy. See In re Roman, 2018 WL 4801933, page 23 (Bankr. D.P.R. October 2, 2018).

The court follows and agrees with the analysis in the BAP's decision regarding the appropriateness of discretionary abstention under the particular facts of this case. Discretionary abstention is provided in 28 U.S.C. §1334(c)(1): ". . . nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." The purpose of discretionary abstention is to ensure that the jurisdiction of the bankruptcy court is exercised only when appropriate to the expeditious disposition of bankruptcy cases. In re Oluleye, 2018WL 1511588, page 6 (N.D. Ga. March 26, 2018). Discretionary abstention applies to both core and non-core proceedings and there is no clear standard or test that governs when a court should exercise its discretion to abstain from hearing a proceeding. The statute refers to three criteria: the interest of justice, comity, and

respect for State law. However, courts have identified key relevant factors. In re Jimenez Marrero, 2018 WL 5795840, page 5 (Bankr. D.P.R. November 2, 2018).

The factors were discussed in the BAP opinion. See also: In re Welded Construction, LP, 609 B.R. 101 (Bankr. D.Del. 2019); In re Penson Worldwide, et al v. Schonfeld Group Holdings LLC, 587 B.R. 6,22 (Bankr. D.Del. 2018). This court agrees with the BAP's conclusion that the legal issue is dominated by State law, the dispute involves nondebtors, the determination of the tax liability will not affect any other creditor and there is no threat of dissipation of funds. The court adds that the decision does not affect the bankruptcy estate.

In view of the foregoing, the court reaffirms its decision to decline jurisdiction on the grounds of discretionary abstention. Therefore, the court orders WM to file an action to determine if the Debtor had any tax liability under the "New Construction Exemption to the Municipal Property Tax Act" before the appropriate State forum within 30 days. If WM timely files the action, the court will order that the consigned funds be transferred to such forum. Upon failure to timely comply, the court will order that the consigned funds be transferred to CRIM. The fact that the consigned funds may be transferred to CRIM does not bar WM from further challenging the transfer before the appropriate State forum.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 13th day of March 2020.

Enrique S. Lamoutte
United States Bankruptcy Judge

-6-